UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARIA BREED, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-2775 |
| | § | |
| WALGREEN CO., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Walgreen Co.'s ("Walgreens") motion for summary judgment. Dkt. 16. On consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the court **GRANTS** Walgreens's motion for summary judgment.

## I. BACKGROUND

Walgreens is a corporation composed of national retail pharmacies. Plaintiff Maria Breed ("Breed"), a Hispanic female, was hired by Walgreens in 1999 and transferred to Texas in 2005 as a store manager. Soon thereafter, she volunteered to participate in Walgreens's Emerging Leader Store Program ("EL Program"), the purpose of which is to groom store managers for promotion to the district manager position. *Id.* During this time period, Anthony Le ("Le") took over the district manager position for the district in which Breed's store was located. In March 2006, Breed received a written "Final Warning" for mishandling corporate monies.[1] A month later, in April 2006, Breed received what both parties agree was an outstanding review by Le. Notably, as a part of the review

---

[1] The Final Warning, signed by Breed, states the following: "Store Mgr Maria Breed made a payout to an individual after receiving a telephone call from someone who identified themself as a Walgreens Corporate employee. . . . The payout was not in fact authorized by anyone in the Walgreens company, and was in fact a scheme by unidentified individuals to steal money from the store. Mgr Breed did not coordinate the payout with the District Manager or any other member of Supervision, as the caller told her to keep it confidential." Dkt. 16, Ex. L.

process, Breed designated that she could "handle a higher-volume store or new store."  In part due to her "glowing" reviews, Le then offered Breed the opportunity to transfer to a higher-volume 24-hour store within the same district in October of 2006.  Both parties viewed this transfer as a promotion, as the high-volume nature of the store, in addition to its 24-hour operations, would increase Breed's bonus potential.  Breed accepted the position, noting that it was "considered a promotion."  After taking over the new store, Breed determined that the combined burdens of the EL Program with her new store responsibilities were too great; she therefore withdrew from the EL Program in January of 2007.  Breed alleges that upon learning of her decision, Le responded by stating "You're killing me.  With you, I make my quota. . . .  I get double points with you [because] you're a Hispanic female."  Le denies making this comment, and he further claims that he would have no motive to say such a thing, as neither his reviews nor his pay scheme includes whether he has subordinate managers participating in the EL Program.  Breed claims that her working relationship with Le became strained after her decision to withdraw, eventually coming to resemble a "break-up" between the two.

Beginning in November 2006, a month after Breed transferred, she began to voice complaints to Le about her new store, including that it was a far drive for her and that she "didn't feel safe" in the surrounding neighborhood.  At some point during the conversation, Breed alleges that Le told her that she "should feel like you're family [with the location's clientele] because most of the customers are Mexican" and that she "should fit the profile."  However, Breed admits that she did not voice her disapproval of this comment to anyone, including Le himself.  Le offered to transfer Breed, even if it meant a demotion, as soon as an appropriate position in his district opened.  Breed continued her complaints up until March of 2007.  During this time period, Le again reviewed Breed's performance, giving her even better remarks than she received in her previous evaluation.

Before Le had the opportunity to transfer Breed, Walgreens's Loss Prevention Department received a complaint from an employee of Breed's.  The department investigated the allegations, conducted interviews, and took statements from several employees.  Le was not involved in this process, other than sitting in on Breed's interview.  At the conclusion of the investigation, the department found that Breed had violated several Walgreens's policies, including disbursing employee payment checks to other (related) employees, and encouraging employees to falsify store records.[2]  When Breed first learned of the investigation, she offered her resignation to Le, who encouraged her to remain with the company pending the investigation's results.  Breed's only voiced complaint of the investigation occurred during a June 6, 2007 phone call to Walgreens's 1-800 number during which she stated she "didn't like the way [the investigation] was being handled."  After Le was provided with the investigation results, he asked Breed to resign.  She refused and was subsequently terminated on June 7, 2007.

Breed, with assistance of counsel, filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in July of 2007.  The EEOC issued a Notice of Right to Sue on June 30, 2008, after which time Breed filed this suit, alleging Title VII violations including sex, racial, and national origin discrimination, retaliation, and hostile work environment.

## II. STANDARD OF REVIEW

### A.  Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and

---

[2] Specifically, Walgreens contends that their investigation yielded the following findings, all of which are contrary to their corporate policies and procedures: (1) Breed knowingly allowed two sisters to work in the same store; (2) Breed encouraged the two sisters to tell others they were cousins; (3) Breed allowed one employee to work under the employee number of another, allegedly to avoid overtime results; (4) Breed paid wages to one employee for the work performed by another employee; (5) Breed knowingly allowed one employee to forge the signature of another in order to pick up their check; and (6) Breed instructed employees to falsify records to accomplish individual and store goals. Dkt. 16.

3

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id*. "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

4

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

**B.     Sex and Racial Discrimination Standard**

Title VII makes it unlawful for an employer to discharge an employee because of their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff can prove intentional discrimination through either direct or circumstantial evidence. *See Urbano v. Continental Airlines Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Direct evidence is evidence which, if believed, proves the fact without inference or presumption. *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993)). When a plaintiff offers only circumstantial evidence, the *McDonnell Douglas* framework requires the plaintiff to establish a prima facie case of discrimination, which, if established, raises a presumption

of discrimination.  *See Rutherford v. Harris County, Tex.*, 197 F.3d 173, 179–80 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817 (1973)).  To establish a prima facie case, the plaintiff must show that "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated" or the plaintiff was replaced by a non-minority. *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (quoting *Rutherford*, 197 F.3d at 184); *Jatoi v. Hurst-Eules-Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987).  The plaintiff must raise a genuine issue of material fact as to all four elements of her prima facie case of discrimination.  *Id.*

If the plaintiff successfully establishes a prima facie case of discrimination, the employer must then produce a legitimate nondiscriminatory reason for the adverse employment decision.  *Id.* Once the employer produces a legitimate nondiscriminatory reason, the presumption of discrimination dissipates and the burden shifts back to the plaintiff-employee to raise a genuine issue of material fact that the nondiscriminatory reason is merely pretextual.  *Id.*

To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).  A plaintiff may establish pretext by showing either (1) the reason offered by the employer is untrue, or (2) the reason is true, but the plaintiff's protected characteristic was a motivating factor in the adverse decision (the "mixed-motives" alternative).  *Id.*; *Keelan v. Majestco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).[3]  Under the mixed-motives alternative, the defendant must show that "the same adverse employment decision would have been

---

[3]Breed claims this is a mixed-motives case.  Dkt. 1.  Therefore, the court will analyze the argument using the mixed-motives framework.

made regardless of discriminatory animus" only if the plaintiff can show that the protected characteristic was a motivating factor in the decision. *Rachid*, 376 F.3d at 312 (citation omitted). The plaintiff bears the ultimate burden of persuading the trier of fact, by a preponderance of the evidence, that the employer intentionally discriminated against her because of her protected status. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219–20 (5th Cir. 2001).

**C.      Retaliation Standard**

Title VII's antiretaliation provision protects an employee who is discriminated against because she has "'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S. Ct. 2405 (2006) (quoting  42 U.S.C. § 2000e-3(a)).  To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a casual link existed between the protected activity and the adverse employment action. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 1997).  At a minimum, "in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) (citing *Medine v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)).

**D.      Hostile Work Environment Standard**

The United States Supreme Court noted in *Harris v. Forklife Systems, Inc.* that "when discriminatory conduct [is] so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin," the broad notions of Title VII are offended.  510 U.S. 17, 22, 114 S. Ct. 367 (1993).  Evidence of a hostile work environment may include "the frequency of discriminatory conduct; its severity; whether it is physically threatening

7

or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 333 (5th Cir. 1994) (quoting *Harris*, 510 U.S. at 23).

### III. ANALYSIS

#### A.     Discrimination Claim[4]

Walgreens argues that this case must be analyzed under the *McDonnell Douglas* burden-shifting framework because Breed has provided no direct evidence of discrimination. Walgreens asserts that it is entitled to summary judgment because Breed has failed to establish a prima facie case of discrimination under the *McDonnell Douglas* framework, which requires a plaintiff to raise a genuine issue of material fact as to all four elements of the prima facie case. Specifically, Walgreens disputes that Breed can establish the third and fourth elements of the analysis—that she suffered an adverse employment action and that her position was filled with a person who was not a member of a protected group or that similarly situated individuals outside of the protected class were treated more favorably. Although the court is inclined to agree with Walgreens, it is unecessary to make that determination.

Assuming, arguendo, that Breed has in fact provided sufficient summary judgment evidence as to each of the four elements, Walgreens in turn has met its burden, the subsequent step in the analysis, to show the court that a "legitimate nondiscriminatory reason" exists to explain Breed's

---

[4]The court notes Walgreens's argument that the discrimination claim lies outside of the legal and factual theories Breed alleged in her original EEOC complaint. Dkt. 16. However, the discrimination claims need only be "reasonably related" to the EEOC allegations. *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980). The court believes that Breed's allegations of discrimination would be readily apparent from a reading of the EEOC complaint and thus do not preclude litigation of those claims here. In any event, this finding is not outcome determinative as to this matter.

termination.[5]  Walgreens's investigation results, which in turn were provided to Le, revealed that Breed violated several of Walgreens's substantive policies.  Dkt. 16.  The purpose of Title VII surely is not "to compel employers to retain persons in their employ regardless of their [potentially] unlawful conduct."  *NLRB v. Fansteel Corp.*, 306 U.S. 240, 255, 59 S. Ct. 490 (1939).  Therefore, Walgreens's proffered explanation "discharges [their] burden of proof at this stage."  *McDonnell*, 411 U.S. at 803.

The burden then returns to Breed to raise a genuine issue of material fact that the nondiscriminatory reason is merely pretextual.  Breed claims that her case should be analyzed under the "mixed-motives" prong, thus acknowledging that Walgreens's explanation for Breed's termination—the serious findings of the investigation—is true.  *Rachid*, 376 F.3d at 312.  Breed nonetheless claims that her protected characteristics were motivating factors in the final termination decision, based on several examples of pretext: that the investigation "findings" Walgreens based their decision upon were not actual "findings"—for all practical purposes, an argument of semantics; that a variation exists between Walgreens's EEOC response and current motion as to why Breed was fired; and the fact that Breed received a "glowing" performance review prior to her termination, combined with Walgreens's policy to allow employees, in the appropriate situation, to improve before being terminated, suggest that Walgreens had discriminatory motives.  To the court, these examples tend to imply analysis under the alternative prong—that Walgreens's reason for the termination is not true—instead of the "mixed motives" analysis.  In either event, however, the court

---

[5]Breed additionally alleges that even if she cannot meet all elements of the prima facie case, under Fifth Circuit precedence, she is not so required.  Dkt. 20.  Instead, Breed claims, the court should "examine all the evidence that has been adduced for other indicia of racial discrimination relating to [her] discharge and determine whether it is **more likely than not** that the employer's actions were based on illegal discriminatory criteria."  *Jatoi v. Hurst-Awless-Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987) (emphasis added).  Again, this argument need not be decided, as the court focuses its analysis on one step beyond the prima facie case—Walgreens's legitimate nondiscriminatory reason for termination.

simply finds no merit to these arguments.  These alleged examples of pretext do not create a material issue of fact as to whether the decision to terminate Breed was based on anything other than a very serious allegation, investigation, and finding of wrongdoing.  The two comments made by Le that Breed claims show a mixed-motive in Walgreens's termination decision do not rise to the level of discrimination that Title VII requires.

Finally, in the alternative, Breed argues that direct evidence of Walgreens's discrimination exists in Le's "double points" statement, and therefore, the *McDonnell Douglas* analysis is not necessary.  *Jatoi*, 807 F.2d at 1219.  However, as the Fifth Court has noted, "generalized testimony by an employee regarding [her] subjective belief that [her] discharge was the result of . . . discrimination is insufficient" to stand as direct evidence.  *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 566 (5th Cir. 1983).  Here, the court will not read into this statement, offensive and unprofessional as it may be, a connection to Breed's termination almost six months later.  Instead, to label this direct evidence, the court would be required to infer that Le's displeasure with Breed's decision to leave the EL Program manifested itself in her firing—an inference the court is unable to make.  *Portis*, 34 F.3d at 329 (finding statements that do not require inferences to connect alleged discriminatory conduct with a plaintiff's protected characteristics sufficient to stand as direct evidence).  Therefore, this statement cannot be considered direct evidence, thereby precluding Breed from establishing her prima facie case.

In sum, because Walgreens has provided the court with a legitimate nondiscriminatory reason for Breed's termination for which Breed has failed to create a genuine issue of material fact as to its pretextual nature, and because Breed lacks direct evidence of discrimination, Walgreens's motion for summary judgment is **GRANTED** as to Breed's discrimination claims.

**B.     Retaliation Claim**

Breed claims that she "opposed [Walgreens's] discriminatory practice of transferring" her to a store allegedly due to her race, which Breed alleges is a "protected activity."  Dkt. 1.  Although Breed agreed to the transfer and both sides acknowledged it as a promotion, Breed now claims that she was retaliated against (by her termination) for opposing the transfer.  *Id.*  It is true that Breed discussed her dissatisfaction with the transfer with Le; however, her comments were limited to those relating to the store's distance from her home and the safety of the surrounding areas.  Dkt. 16, Ex. O.  It is uncontested that Breed failed to voice her opposition to the transfer due to its alleged basis on her race in any way at any time, with any person, prior to the filing of this lawsuit.  *Id.*

After reviewing the record, the court finds that summary judgment evidence is lacking as to the causation element of Breed's prima facie case.  As the Fifth Circuit has noted, at a minimum, an employer must have knowledge of the employee's protected activity in order to establish her prima facie case.  Here, at no time was Walgreens aware of Breed's protected activity—opposing the transfer due to its alleged basis on her race—because it simply went unarticulated.  Although the court places in high regard the purpose and protection Title VII affords, it is not willing to punish employers who act, or fail to act, without knowledge of grievances an employee may hold against it.  Therefore, Walgreens's motion for summary judgment is **GRANTED** as to Breed's claim of retaliation.

**C.     Hostile Work Environment Claim**

Although Breed did not specifically allege hostile work environment as one of her enumerated complaints, she did imply it through the pleading of her discrimination claims.  *See* Dkt. 1. Because Breed is not in fact required to use "magic words" to make a hostile work environment

claim, the court finds it prudent to analyze this possible allegation as well.  *Portis*, 34 F.3d at 332n.14.

Breed fails to provide the court with any summary judgment evidence that would relate to any of the Supreme Court's enumerated factors to consider.  The record is devoid of the "frequent" and "severe"discriminatory conduct that a hostile work environment would necessarily produce. *Harris*, 510 U.S. at 23.  Further, there is no indication that any of the alleged discriminatory remarks in any way interfered with Breed's workplace performance.  *Id.*  In fact, her performance reviews suggest the opposite.  While the court is cognizant that no bright-line test exists as to this claim, it finds that the evidence is lacking, given "all the circumstances," to create a genuine issue of material fact. *Id.*  Therefore, the motion for summary judgment is **GRANTED** as to Breed's potential hostile work environment claim.

## IV. CONCLUSION

Pending before the court is defendant Walgreens's motion for summary judgment.  Dkt. 16. On consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the court **GRANTS** Walgreens's motion for summary judgment as to the plaintiff's three claims: (1) sex, race, and national origin discrimination; (2) retaliation; and (3) hostile work environment.

It is so ORDERED.

Signed at Houston, Texas on October 26, 2009.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY